JUDGE BRICCETTI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x



11 CIV 8641

LETTY BATISTA,

        Plaintiff

v.

GOLDMAN & WARSHAW, P.C.,
D/B/A GOLDMAN, WARSHAW
& PARRELLA IN NEW YORK

        Defendants.
-------------------------------------------------------x

COMPLAINT

JURY DEMANDED

## INTRODUCTION

1.    This is an action for money damages and declaratory judgment, brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), New York General Business Law § 349, and New York Judiciary Law § 487.

## JURISDICTION AND VENUE

2.    The Court's jurisdiction is conferred by 15 U.S.C. § 1692k and 28 U.S.C. §1337.

3.    Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

4.    Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

5.    Venue in this District is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this district, Defendants transact

1

business and maintain an office in this District, and Plaintiff resides in this District.

## PARTIES

6.     Plaintiff, Letty Batista is a natural person who has resided at all relevant times in Middletown, New York.

7.     Letty Batista is a consumer as defined in the FDCPA § 1692a(3).

8.     Defendant Goldman & Warshaw, P.C. ("G&W") is a law firm engaged in the collection of debts in this state, registered as a foreign professional corporation with the New York State Secretary of State with its principal place of business located at 34 Maple Avenue, suite 101, Pine Brook, New Jersey 07058.

9.     G&W does business in New York as Goldman, Warshaw & Parrella and maintains an office at 10 Oakland Avenue, Warwick, NY 10990.

10.     G&W's principal purpose is the collection of debts; and it regularly attempts to collect debts in this state alleged to be due another.

11.     According to its website, G&W "is a law firm that has represented creditors since 1970." The website goes on to tout G&W's integrated, comprehensive collection operation, stating *inter alia* as follows:

> We [G&W] believe time is of the essence in the collection process. We therefore offer a complete collection department to locate debtors and attempt collection prior to filing a lawsuit. When all efforts to collect the debt are exhausted, a detailed report is provided to you and a recommendation is made to determine if the claim is suit worthy. If the claim is suit worthy, a lawsuit may be filed after the case review. If an answer to the complaint is

filed, we will move quickly to resolve the issues and settle
the case.
http://www.njnylaw.com/litigation.htm

12.     G&W's website states that the firm is a member, inter alia, of the American

Collectors Association, the Commercial Law League of American and National

Association of Retail Collection Attorneys, the Consumer Credit Association of

Metropolitan New York, and the Debt Buyers Association.

13.     A search of the E-Courts database confirms that G&W is a high volume

collection firm – a search of the New York civil courts database indicates that G&W

filed over 4,000 collection actions in New York, in 2010 alone.

14.     In sum, G&W is indisputably a debt collector as defined by FDCPA §

1692a(6).

## FACTS

15.     On or about January 23, 2009, G&W, filed a lawsuit against Ms. Batista in

New York State Supreme Court, Westchester County titled FIA Card Services, N.A.

F/K/A Bank of America, NA v. Letty Batista, Index Number 1268/2009 (hereinafter

"State action").

16.     On February 23, 2009, an Affidavit of Service was filed in the State action

alleging that service of process had been made on Ms. Batista on February 12, 2009

by leaving a copy of the summons and complaint affixed to the door of 1160 Midland

Avenue, Apt. 6G, Bronxville, NY 10708.

17.     The Affidavit of Service is false.

18.     Although Ms. Batista had previously lived at 1160 Midland Avenue, Apt. 6G,

Bronxville, NY 10708, she had moved from there in January 2005, when she relocated to her current residence at 9 Francis Drive, Middletown, NY 10940.

19.     Moreover, Ms. Batista received billing statements from G&W's client, Bank of America/FIA Card Services at her current address from 2005 until 2008.

20.     Upon information and belief, G&W gave the Bronxville address to its process server and directed that service be made on Ms. Batista, at a location where she did not reside.

21.     As a result, Ms. Batista never received notice of the lawsuit against her in Westchester County Supreme Court.

22.     Despite these deficiencies, Defendants, who knew or should have known that Ms. Batista had never received service of the summons and complaint, proceeded with the State action; and on or about January 25, 2010, Defendants moved for default judgment against Ms. Batista.

23.     Ms. Batista had fallen behind on a Bank of America Credit Card in early 2008. She first attempted to settle the account with a debt settlement company. But after having paid $2,668 to Debt Settlement USA, she learned that Bank of America would not cooperate with any debt settlement company.  At that point Ms. Batista, at the advice of Debt Settlement USA, had missed several months of payments to Bank of America, and had paid all she could afford to the debt settlement company.

24.     Around that time in 2008 Ms. Batista, pregnant with her daughter, also learned that she had breast cancer.

25.    In the later half of 2008, while dealing with a new born child, chemotherapy, and surgery for a double mastectomy, Ms. Batista was emotionally and financially unable to deal with the dunning letters she was receiving from FIA Card Services/Bank of America and its third-party debt collectors at her residence in Middletown, NY.

26.    On January 23, 2009, G&W filed a complaint against Ms. Batista in the State action.

27.    Although G&W's client had been sending billing statements and demands for payment to Ms. Batista at her residence in Middletown, NY from early 2005 through late 2008, G&W listed Ms. Batista's address as 1160 Midland Ave, Apt. 6G, Bronxville, NY 10708 (her residence before 2005) on the Summons and Complaint and alleged that venue in the State action was based on defendant's residence, despite the fact that G&W knew of should have known that Ms. Batista did not reside at that address.

28.    Because she was sued in a distant venue with service directed to a location where she did not reside, Ms. Batista never received notice of this lawsuit; and on June 1, 2009, default judgment was entered against her in the State action.

29.    Ms. Batista never knew that she had been sued or that judgment had been entered against her until she received notice from the Orange County Sheriff's Office, dated July 29, 2011, that G&W had issued an Income Execution in enforcement of the Judgment.

30.    Notably, G&W directed the Sheriff's office to serve notice of the execution on

5

Ms. Batista at her current residence in Middletown, NY.

31.     After receiving the Sheriff's notice, Ms. Batista moved by Order to Show Cause to vacate the default judgment; and on September 13, 2011, Westchester County Supreme Court Justice Mary H. Smith, Ordered the judgment vacated because Ms. Batista did not reside at 1160 Midland Avenue, Apt. 6G, Bronxville, NY at the time of the alleged "nail and mail" service purported to have been made on February 10, 2009.

32.     In vacating the judgment, as well as the Income Execution, Justice Smith's decision took particular note of the fact that the Income Execution G&W sent to the Orange County Sheriff indicated Ms. Batista's current address, where she has resided since early 2005.

33.     Through Counsel, Ms. Batista then moved the Court for an Order dismissing the complaint in the State action.

34.     Only after that motion had been made, G&W contacted Ms. Batista's counsel and agreed to stipulate to the dismissal of the complaint in the State action.  That stipulation was filed with the Westchester County Clerk on November 2, 2011.

35.     Defendants knew or should have known, that they directed service of the summons and complaint in the State action to be made at an address where Ms. Batista did not reside.

36.     Not only did Ms. Batista not reside in Westchester County at the time of the lawsuit, she also never entered into an agreement on the credit card account while residing in the County.

6

37.     Instead, she opened that account in 1997, while living in Bronx County.

38.     Accordingly, G&W also chose to bring suit against Ms. Batista in a jurisdiction which it knew or should have known was other than the jurisdiction in which Ms. Batista resided or in which she entered into the contract that formed the basis of the suit.

39.     Moreover, G&W knew or should have known that Ms. Batista's residence did not create grounds for venue in Westchester County Supreme Court as alleged in the Summons and Complaint in the State action.

40.     Although Defendants knew or should have known that the judgment was based on bad service and false and deceptive statements – and thus, was invalid as a matter of law – Defendants acted to enforce the judgment through the Orange County Sheriff's office.

41.     The complaint, the application for default judgment, and the income execution in the State action were signed by G&W principal, Jeffrey M. Parrella, Esq.

42.     It is apparent based on the facts above, that Mr. Parrella did not meaningfully review Ms. Batista's account file, any of the pleadings and motions, or judgment enforcement documents before directing service, signing the pleadings and motions and causing them to be filed with the New York State Supreme Court, Westchester County, or signing the income execution and sending it to the Orange County Sheriff's office.

43.     Upon information and belief, Mr. Parrella's failure to review the account file

before directing service, far from an anomaly, is part of the business plan developed by Defendants, who have found that meaningful pre-service review is not as profitable as service of the summons and complaint without review, because the overwhelming majority of consumer collection actions are won on default or against unsophisticated *pro se* litigants who are, as a practical matter, incapable of meaningfully challenging deficient service.

44.     Upon information and belief, Mr. Parrella's failure to review the pleadings and motions before filing them, far from an anomaly, is part of the business plan developed by Defendants, who have found that meaningful pre-filing review is not as profitable as filing of pleadings and motions without review, because the overwhelming majority of consumer collection actions are won on default or against unsophisticated *pro se* litigants who are, as a practical matter, incapable of meaningfully challenging even the most deficient, boilerplate consumer collection pleadings and motions.

45.     Upon information and belief, Mr. Parrella's failure to review a default judgment and supporting papers before acting to enforce the judgment, far from an anomaly, is part of the business plan developed by Defendants, who have found that meaningful pre-enforcement review is not as profitable as judgment enforcement without review, because the overwhelming majority of consumers who have their assets seized and wages garnished are, as a practical matter, incapable of meaningfully challenging and preventing a loss of income or property to the enforcement of invalid judgments.

## FIRST CAUSE OF ACTION

**The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA")**

46.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

47.     By undertaking the above referenced collection activities Defendants repeatedly violated 15 U.S.C. § 1692 *et seq*.

48.     Specifically and without limitation, Defendants violated the FDCPA by:

a.     Filing a lawsuit against a consumer defendant in a jurisdiction other than the one in which she resides or where she entered into a contract sued upon in violation of § 1692i(2);

b.     Filing a false and deceptive summons and complaint listing an address other than Ms. Batista's current residence and claiming that inaccurate residential address as the basis for venue in violation of §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692(f);

c.     Directing a process server to serve the summons and complaint in the State action at an address that Defendants knew or should have known was not Ms. Batista's current residence in violation of §§ 1692e, 1692e(10), and f;

d.     Filing a false and deceptive application for default judgment based on service of the summons and complaint at an address other than a consumer defendant's current residence in violation of §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692(f);

e.     Taking steps to enforce a default judgment when Defendants knew or

should have known that the judgment was invalid because it was based on defective service and false and deceptive statements in violation of §§ 1692e, 1692e(3) 1692e(5), 1692e(10), and 1692f.

f.      Filing a Complaint and application for default judgment that were deceptive and misleading in that they were signed by an attorney but were not in fact meaningfully reviewed by an attorney, in violation of §§1692e, 1692e(3), 1692e(5), 1692e(10), and 1692f;

49.   As a result of these violations, Ms. Batista is entitled to actual damages, statutory damages of up to $1,000 and attorney's fees and costs.

50.   Ms. Batista's actual damages include stress, anxiety, sleeplessness, fear, attorney's fees and costs incurred to obtain vacatur and dismissal of the wrongfully filed state court collection action, and pain and suffering.

## SECOND CAUSE OF ACTION

### NYGBL § 349 (Deceptive Acts and Practices Unlawful)

51.   Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

52.   Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in the First Cause of Action was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of NYGBL §349 independent of whether it also constituted a violation of any other law.

53.     Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public. Specifically, and without limitation, each of the unfair and deceptive practices listed above in Paragraph 48(a) – (f) is, upon information and belief, a recurring practice that Defendants have taken, not just against Ms. Batista, but against large numbers of consumers as part of a policy and practice that is designed and has the effect of increasing Defendants' profits by collecting from unsuspecting consumers through the submission of false and deceptive pleadings and motions in New York State courts and enforcement of judgments that Defendants know or should know are invalid.

54.     Each of Defendants' deceptive acts, by their nature, involves a material misrepresentation.

55.     As a result of these violations of NYGBL §349, Plaintiff has suffered actual damages and is therefore entitled to actual damages, punitive damages of up to $1,000, attorney's fees and costs.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF JUDICIARY LAW § 487
## (AGAINST G&W ONLY)

56.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

57.     Upon information and belief, G&W was guilty of deceit in the State action.

58.     G&W perpetrated this deceit with intent to deceive the New York State Supreme court, and Ms. Batista.

11

59.     Specifically, upon information and belief, and as reviewed above, Mr. Parrella
of G&W knowingly filed a false summons and complaint and motion for default
judgment with the Court in the State action.

60.     As a result of this deceit, Mr. Batista has suffered damages including but not
limited to stress, anxiety, fear, sleeplessness, and attorney's fees and costs incurred
to obtain vacatur and dismissal of the wrongfully filed state court collection action,
and pain and suffering.

61.     G&W's deceit, as described above and upon information and belief, is part of
a larger, pernicious and recurring policy and practice that is designed and has the
effect of increasing G&W's profits by collecting from unsuspecting consumers
through the submission of false and deceptive complaints and motions in litigation
in New York State courts.

62.     Ms. Batista is entitled to treble his damages as a result of G&W's violations
of Judiciary Law § 487, reasonable attorney's fees, and costs.


**WHEREFORE** plaintiff respectfully requests that this Court award:

  a.  On the FIRST CAUSE OF ACTION (FDCPA), Declaratory Judgment that
      Defendants' conduct violated the FDCPA, actual damages, statutory
      damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C.
      §1692 k;

  b.  On the SECOND CAUSE OF ACTION (NYGBL §349), actual damages,
      three times the actual damages up to $1000, costs and reasonable

attorney's fees pursuant to NYGBL §349(h);

c. On the THIRD CAUSE OF ACTION (JUDICIARY LAW § 487) treble

damages, costs, and reasonable attorney's fees; and

d. Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: November 28, 2011
      White Plains, New York

                  Respectfully Submitted,

                  Peter T. Lane, Esq.
                  One of Plaintiff's Attorneys

Plaintiff's Attorneys
Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
1025 Westchester Ave., Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fax: 914-946-2930